24-20480, Alvarez v. NES Global. Mr. Barrett. May it please the court. This is a case about the proper construction of a federal regulation where the district court added requirements to the regulation impermissibly, and that requires reversal of the judgment. The regulation in question is part of the Department of Labor's regulations that define and delimit so-called bona fide executive exemptions to the Fair Labor Standards Act. And the department has basically three requirements. There's a duties requirement that employees have to meet certain non-manual labor duties. There's a salary level requirement that employees have to be paid a certain amount. And there's a formal requirement that the employees have to be paid on a salary basis. And this case only involves the third of those. The first two were salary basis tests. And before I get into the merits of that, I wanted to address the question the court asked the parties to address earlier this week, which was a finality issue. Before the final judgment in this case, the parties interviewed some stipulations. And in those stipulations, it made reference to an existing dispute that was not being weighed. And I think that may have been what triggered the court's inquiry. That was a dispute about whether the district court's prior summary judgment were applied to employees, applied only to employees whose additional compensation was computed on a hourly basis. And the court subsequently ruled on that. It's in docket. It's docket item 139, page 47, 26 of the record. And it held that the summary judgment order is limited to those employees whose additional compensation was paid on a daily basis. The parties then agreed on the form of a final judgment based on the summary judgment. And the district court entered the final judgment. There are no lingering or remaining issues to be resolved other than a claim for attorney's fees under the statute. So I think that resolves that concern about finality. It's your representation that if the case goes back, that the only question that can be raised by either side is about attorney's fees? Well, it might depend on what this court does when it sends it back. But yes, if, for instance, the court were to affirm the judgment below, then, yeah, the only thing left would be attorney's fees. And what if we were to reverse, in part? Well, I guess it would depend on whether you remanded some issue. But if you reversed or rendered on the issue of whether the salary basis test was met, I think we'd be done. Well, maybe a better question is this. The bolded clause at the end of the stipulation says, any other issue not expressly stipulated herein. So this is the reservation of rights. By jointly submitting the stipulation by contested facts and proposed judgment, the parties do not waive or compromise this, that, or the other. Several reservations. And then in bold, it says, or any other issue not expressly stipulated herein. It sure looks like there's a lot of reservations here and things that you contemplate, or perhaps your friend on the other side contemplates, raising. Well, I think that the only issue that I can discern from this record is the dispute about the scope of the summary judgment order. And that was explicitly resolved by the district judge in that subsequent ruling prior to entering the final judgment. I'm not aware of any other issues out there that need to be submitted to the trial judge other than attorney's fees. So what do we want to do? Just one other question on that. If we were to reverse on the good faith fact finding, the numbers are obvious again? If we were to reverse? Reverse as to no willfulness. Well, okay. I think that would first have to be affirmed. Affirm and reverse. I'm not in any way forecasting. Then I think you might have to have a trial on whether it's willful or possibly in subsequent summary judgment rulings. But that would be an issue that would revolve. Discreet and separate. So moving on to the merits of the appeal, there are two errors that the district court made in its construction of the salary basis regulation to require a person. The regulation in question is section 602A. And the regulations explicitly say that this particular provision is what defines salary basis. If you have complied with 602A, the salary basis test is met. And what 602A requires is that each paid period on a weekly or less frequent basis, the employee receives or is entitled to receive a preset amount, a predetermined amount that's not subject to being reduced based on the amount or quality of the work that's performed during the week. That's the requirement for the salary basis test. And the district court added two requirements to this. Actually, one exception to it and one new requirement. The exception was that if the employer used an hourly rate or a daily rate in a calculation to come up with what the amount of the employee's fixed weekly compensation is, that takes it out of the statute. You can no longer rely on section 602. That's not in the regulation at all. In fact, it's not in any case that predates the gender case, which I'll get to in a minute. It's simply an atextual requirement. That really makes no sense. It essentially makes a meaningless distinction between a preset amount that was set arbitrarily versus one that was calculated based on some presumed number of days or hours or maybe based on a yearly salary divided by a certain number of weeks or days. The regulation doesn't care about that. It just requires that it's a predetermined amount. How they came up with the predetermined amount doesn't matter. So that's the first error. The second error is the district court added a requirement to section 602 that requires that the predetermined amount constitute all compensation for the employee for work performed during a normal work week. That is not in the regulation. We don't even know what normal work week means. But there's nothing in the regulation about that. In fact, the regulation says the opposite. It says that the predetermined amount need only be some part of the employee's compensation. In section 604, it adds to that and makes crystal clear that the employee may receive additional compensation paid on any basis that the employer deems appropriate, and that will not affect the employee's exemption status. So by adding this new requirement to section 602A, the court infamously revised the regulation to include not only the exception that I mentioned before, but a new requirement that the predetermined amount include all compensation for all work performed during a normal work week, whatever that means. And this brings me to the gendered opinion, which is kind of the elephant in the room in this case. And we filed a motion for en banc review initially because of that case. We believe that the case does not follow the regulations and is not supported by the Supreme Court's Helix decision and, in fact, contradicts the Supreme Court in Helix in certain respects. But the gendered case essentially made the same two holdings that the district court did here, looking at how the amount of the base salary was derived at by the employer or employee, maybe treating that as if that mattered when it doesn't, and adding the normal work week requirement that's completely atextual. And it borrowed that out of the non-exclusive example of a compliant paid program in 604A and then used it as if it were a modification of 602A to require yet another requirement that's not in the regulation. So the gentry cited the Helix case as support for its opinion, but it doesn't support it at all. This case is very familiar. This court is very familiar with the Helix case because it's an appeal of a non-en banc decision from this court. But in Helix, that involved an employee who was paid strictly by the day. There was no base salary, no weekly salary, not even an argument that they had a hybrid paid process like what is involved in this case. And the argument in that case was that the employee should not have to comply with the salary basis test at all because they're a highly compensated employee. And this court looked at that and said, under the plain language of these regulations, you're wrong. You have to comply with the salary basis test. And the salary basis test, the only way to comply with the salary basis test with a straight daily employee is to comply with section 604B, a different section than what's involved here. And the employee in that case can comply with that. And the Supreme Court agreed with this court and said, yes, they have to comply with the salary basis test. And under those facts, where the employee is solely paid on a daily basis, they have to comply with section 604B. Nothing in Helix supports the two rulings in this case that we're complaining about. The court in Helix did not say, look behind the predetermined amount that the employer pays and decide that they calculate that number based on an hourly or daily rate. And so now 602 doesn't apply. They didn't say that at all. There's some language in Helix that refers to the salary basis being based on a unit of time by which the pay is calculated. But they're not talking about how do you calculate what the weekly salary is. They were rejecting an argument that the weekly basis is a function of how often the employee receives his paycheck. They said it's not a factor of paycheck frequency. It's a factor of how the amount you're paid is calculated and paid. And it has to be by a weekly or less frequent basis. And I think it's important to look at the regulation in context because what 602A requires is that each pay period, the employee receives a fixed amount on a weekly or less frequent basis. The pay period might be every week, might be every two weeks, might be once a month. So let's say, take the example of an employee who's paid once a month. There would be four weekly amounts. So the period that it's calculated for is weekly as opposed to by the month or by the paycheck. But the court's holding there was not about how the parties came up. Can I just interrupt? What are you asking us to do if the two propositions that led to what you say is error are propositions stated by Gentry? So the district court was following Gentry? Yes, I think the district court reported to be following Gentry. And your complaint is with Gentry? That is one of our principal complaints, yes. But I haven't heard you articulate another. You've got a few minutes left. Just at a broad level, Gentry's been out there for two years. It's been cited considerably with no negative authority. It's been cited by FLSA practice guides. They aren't saying it's inconsistent with Helix. Do you disagree? I think it is inconsistent with Helix. I know you think it is, but it's been looked at in the industry and practice guides and applied in over a dozen cases. And I don't think I'm seeing anybody saying that it's flawed. Do you have authority for Gentry? I don't think there's a practice guide as an indication. Well, 16 cases applying it, right? There may be a handful of cases that apply. A lot of the cases are citing it for more general propositions of the law as opposed to these particular points. For instance, in the Vennable case, a case decided by this court after Gentry, this court made a ruling that is fundamentally inconsistent with Gentry. That's a case that involved employees who received a base salary plus additional compensation paid on a daily basis. And the court said that it complied with the salary basis test, even though the additional compensation was the bulk of the employee's compensation overall. Most of their pay was paid on a daily basis. And this court in Vennable said that that doesn't matter. The fact that the base salary was the predetermined amount paid on a weekly basis, that complies with 602A and additional compensation is fine. If the court doesn't have any other questions. All right, thank you. Thank you. Good afternoon, your honors. My name is Rex Birch. I represent Ms. Alvarez and her co-workers. And may it please the court, there are three ways to resolve this case in our favor. One, apply the Supreme Court's decision in Helix. Two, apply this court's decision in Gentry v. Hamilton-Riker. A case that my friends at NES admit is virtually identical to this one. Number three, apply the plain language of the regulations read as a whole with 602A and 604B operating as independent paths for compliance with the salary basis test and rules and paths that complement each other. Under all these authorities, NES fails the salary basis test. One, because it did not guarantee pay on a weekly or less regular basis. Number two, it set its retainers what it calls the guarantee or salary solo, as little as one day a week for those folks paid on a daily basis or four hours for those folks paid on an hourly basis. As to be an illusion when compared to the employees' regular weekly pay based explicitly on the number of days or hours worked. Third, NES failed to guarantee even the minimal guarantee that it said it would. And it's not like NES didn't know any of that. In 2016, the Department of Labor investigated NES. They told them specifically, you are not treating these folks as exempt employees because you are not guaranteeing them a minimal salary or any salary. And NES said, well, we will fix that by guaranteeing these folks a weekly salary. Nonetheless, when NES was called to make good on the minimum salary, and again, it's a very small percentage of their regular weekly pay, they failed to do so. They failed to do so every single time until they got sued over the course of years involving more than 10% of the plaintiffs in this case. And when your guarantee is one day a week and you have to work at least one day a week to get paid, the number of instances where you're going to work less than that is very rare. And there are folks that have two day guarantees. I don't want to overlook them. But even with respect to folks that had a one day guarantee, NES failed that too. There are multiple people, and I cited in the red brief, where they worked half a day and they got paid half a day. And if there's one thing that's been clear since the dawn of the FLSA is that partial day deductions are not permissible under any circumstance other than there's a limited exception for FMLA leave when somebody is sick and they request FMLA leave. But NES says they don't dock for that. So even that one limited instance wouldn't come into play. The Third Circuit found that with a similar plan like this, and this court cited obviously Brock v. Claridge Hotel, the Third Circuit case, in the Helix-On-Lawn opinion, and the Department of Labor has relied on it many times, that if the guarantee is not operative, that is evidence of willfulness. Here, the court got it right with respect to the merits, but got it wrong with respect to whether or not there is a fact question. We did not move for summary judgment on willfulness or liquidated damages. But the court got it wrong with respect to that question. And that error has real world effects on these people. In the Fifth Circuit, and we're bound by this under our rule of order, and this is what Judge Oldman calls horizontal stare decisis. We're bound by the decision that this court that you can't get prejudgment interest in an FLSA case under 216B. And so these folks don't even get prejudgment interest. And the wages that they are owed have been owed for as much as nine years. And the reason that we have the liquidated damages provision is not to be punitive. It is explicitly, under every circuit's precedent, a compensatory measure that's designed to compensate folks for the delay in payment and the problems that arise when you don't get paid on time. So your argument at the moment, you're shifting to the willfulness argument? Willfulness in good faith, which I think are the good things. But the evidence, Judge Ellison noticed that the evidence is they were consulting with DOL, and they were asking their lawyers, so what's the case where we've reversed a determination there isn't willfulness when the record supports that there was honest inquiry, both to the agency and also in counsel? So we have a more limited objection to the summary judgment on willfulness and liquidation. You're saying material dispute? Well, there is a material dispute, but with respect to one aspect. Because let's set aside the fact that there was honest disagreement amongst judges even as to what the salary basis test was. But the one thing everybody agreed on is there has to be a guarantee. Everybody knew that. That didn't change under anybody's versions of the bill. Everybody understood that there had to be a guarantee. NES understood it. All the courts understood it. Everybody understands that. And that's the part that they failed. Every single time. Not occasionally. It's not like they failed 5% of the time. They failed every single time until after they got sued. And they finally started looking at it. And then they had one instance. Because again, the guarantee is so low that it just rarely comes up. But the one time it came up, the one time they can point to is after they got sued. That's years into this alleged guarantee. And so our point is that regardless of what you know about the other things, you knew you had to provide a guarantee. If you don't provide what you admit you have to do. And what you've been told by the Department of Labor that you will do. And what you say you will do. Then the majority can find that you're trying to obey the act. There are other rationales as well. Judge Kethledge, when the 6th Circuit has adopted the 5th Circuit's view of the salary basis test in a case called Pickens v. Hamilton-Riker. They looked at, essentially, it sounds like essentially the same plan in this case. Because it's the same people created it. I've only seen it with two employers. They both got it from the same people. The court in Pickens during oral argument, Judge Kethledge said, Look, this pay plan patently appears to be an attempt to evade the requirements of the FLSA. And I would submit, with all respect to Judge Kethledge, that that's the right view. That you can look at this and a reasonable juror or reasonable judge could say, Yes, this violates, this is an attempt at evading the FLSA. Not a good attempt to comply with the FLSA. So you could look at the pay plan writ large. You could look at the absence of a guarantee. That's where we would focus. And again, we're not saying reverse surrender on our favor. They have evidence that a jury could look at and say, They did their best. They were terrible at it, but they did their best. But a jury could also say, Look, if you promised to do the guarantee and you don't do it every single time, we don't believe you that that was a mistake. Right? Mistakes happen. I used to be an employment defense lawyer. I have seen good companies get a foul of the FLSA. But that's what we have juries for. Because somebody has to assess their explanation and decide whether that's reasonable, given the facts on the ground. I would like to talk about, my friend, I think, recognizes that we're bound by gentry, but I would just like to talk about things generally, regardless, just because to me it helps to understand sort of the statutory context. NES says, oh, the problem is that you set the salary by reference to an hourly rate. Anytime you use an hourly rate to calculate the salary, ipso facto, it's 6040. And I don't read it that way.  My view of things is as follows. The regulations require that the salary be set on a weekly basis. That's the unit that we need to be looking at. Let's look at what you get for the week. Let's compare that to how that happened with plaintiff Patrick Minow. Okay? Patrick Minow, and you can find his FLSA questionnaire at record, at ROA 3895. The schedule, before he started work, his schedule was set to be five 10-hour days. Five days a week. That's his week. That's his normal work week. And there's one of these, by the way, there's one of these FLSA questionnaires for everybody, and they are required to have a proposed schedule in it. And if it's less than 30 hours, less than three 10-hour days, they treat them all as non-exempt. But if it's, if it's, so it's, we're only talking about people that would be called on to work overtime. Patrick's is five days a week, five 10-hour days. There are people that are seven days. NES, for somebody that is guaranteed, scheduled for five days a week, their guarantee was, and I'm quoting, one day retainer, $802.83. Mr. Mona's contract founded a record on appeal 2000, says the retainer means in any work week in which any time is worked, Patrick is entitled to a guaranteed weekly salary, which equals one day of work in a particular work week at the daily rate. Additional day rate, if Patrick works more than the day is required to meet the retainer, Patrick will be paid the daily rate of $802.83. For all additional days worked. In other words, Patrick is always paid $802.93, multiplied by the number of days that he worked. Let's remove the labels, both the ones that I'm using, both the ones that folks at NES is using, and let's look at what's happening. It's undisputed that somebody paid under NES's retainer system who works one day gets paid $1,000, two days, $2,000, three days, $3,000, and so on. How would we say that person's paid? Would we say that's a weekly salary? Or would we say that's a day rate? I would say that's a day rate. And it doesn't matter if the retainer is two days, because two days is less than five, and nobody in this case had a schedule of work that was less than five days. So whatever basis they used to create the salary, it was decidedly less than a week. And that's why it is so small in comparison to their regular weekly pay, as to be an illusion. Both this court and the Supreme Court have stressed that the regulations have to be read as a whole. So let's start with the provision that my friend largely ignores, which is 604B. Even NES concedes that 604B requires that the guaranteed amount be roughly equivalent to the employee's usual earnings at the assigned daily rate for the employee's normal scheduled work week. The Supreme Court proclaimed that 604B's requirement that the guarantee must approximate what the employee earns for the normal work week to ensure that it functions like a true salary. That is a salary under 602A. If all that 602A requires is a guaranteed amount, which is precisely what my friend is proposing, 604B wouldn't need to guarantee what the employee needs to earn in a normal work week to ensure that it's functioning like a salary. It could just say you need to be guaranteed X dollars. That's not what it says. That's because 602A's salary already provides the full salary for the time worked in a week. The language of 604A makes perfect sense. That's the next provision over 604A because the additional time base pay for hours worked beyond the normal work week is consistent with the salary basis test. Why is it that 604A is the only one that has any type of limitation? Under 604A you can pay a commission in addition to a salary. You can pay a bonus in addition to a salary. But with respect to the time base pay, there is a limitation and that limitation is beyond the normal work week because time base pay within the normal work week has always been consistent with the payment on a salary basis. In 602, your salary represents your full salary for the week as noted by the Supreme Court. Everything you would earn for a normal work week on a time basis. In 604B, the guarantee can represent less than what you would earn in a normal work week. How do we know that? We know that from the plain language of the regulations. I'm going to use the 2015 version because there's been some ups and downs with respect to the regulations. This is the one that covers the large period of time in this case. In that case, we had an employee that made $150 a day and could be guaranteed $500 a month. Right? And that would comply with the reasonable relationship test. And that person worked four or five days a week. Right? So between $600 and $750 is what they normally earned in a week. But nonetheless, the guarantee could be less than that. The guarantee was $500. Right? The reason that we have the reasonable relationship test is to ensure that we don't go too far away from what you earn in a normal work week. But it allows you to pay less than you would earn in a normal work week. That's why the nurses freaked out when it was added to the regulations. They said, you're doing away with the salary basis test. Because under 602A, you can guarantee the full pay for the week. And the Department of Labor said, no, we're going to relax that requirement. But we're going to guarantee that if it comes close enough, we're going to give it a tolerance of 1.5. And that will ensure that that doesn't reduce the guarantee required by the salary basis to just a flat number. And I would also like to say that the rule that my friend proposes, some members of industry asked the Department of Labor for that rule when the reasonable relationship test in 604B was formally added to the regulations under George Bush. They asked for that rule. You can find it in the federal register where some members of industry asked, if you guarantee at least the minimum amount, nothing else should matter. And the Department of Labor rejected that rule. They said, no, the guarantee has to be real with respect to what somebody earns in a normal work week just like it is under 602. And I would submit that this work is not a place to go when the political process breaks down not in your favor. The folks at NES are part of industry, in my experience, is pretty adept at letting the Department of Labor know when the sky is falling as a result of some regulation or something like that. There have even been challenges to the salary basis test itself as to whether or not that is a valid exercise of the Department of Labor's discretion. None of that's an issue in this case. We're bound by principles of party representation on that point. It's clear to me that even if you pretend that the folks at NES were trying to get in line with the regulations, I apologize for wandering a little bit. By the way, I frankly just expected more questions given my experience. On the focus question, on finality, do you agree with the comments made by your proposing counsel? Would you add anything? Everybody that is in the case is covered by the judgment. The judgment is final. I don't think there's anything to add. I went exactly in the same place that he did. I was like, oh, they're confused by some of these folks who paid on both the hourly retainer and the daily retainer. Does the time that they worked under the hourly retainer, does that count for the purposes of this case? Judge Ellison said, no, I didn't appeal that part of it. Is there any way that any party to this appeal, or to the case, on the basis of an affirmance or a reversal, in whole or in part, can squirrel out of this stipulation and start litigating issues that were previously settled? No. The only thing I can think of that might get debated if we go down below is if you reverse or you affirm with respect to the merits finding. You reverse with respect to willfulness because the parties have not stipulated with respect to what are the damages for year three. For the existing two years that are already covered by it, if you just reverse on good faith and not, which is their burden to prove as opposed to willfulness, which is my burden to prove. If you just reverse on the issue of good faith, that's just a toggle switch or the judge's discretion. If the judge finds it, the judge can set it. That's not something that would be litigated and amended. I see that I have surpassed my time even though I promised myself I wouldn't given that I always go over to Judge Richmond unless there's anything further. Thank you very much. Thank you. Thank you. I just have a couple of points I wanted to follow up with. On the issue of willful violation, the controlling precedent says there has to be evidence that they knew that their policy was noncompliant or they acted with reckless disregard for whether it was compliant. The district court found in its unchallenged non-appeal that there's no evidence of that. In fact, NES went to great lengths to make sure that its policy did comply. As Mr. Birch mentioned, this policy came out of a DOL audit where the DOL auditor told them that if the employees received a fixed amount that meets the salary level requirement each week, then that's a compliant pay practice. Then they adopted the practice that they had that they did in this case and showed it to the auditor and he said it was fine. There's no evidence at all that they disregarded any concerns of the Department of Labor. There's no evidence that they weren't trying to comply with the salary basis regulations. There's no evidence that they, in those rare instances, less than one percent of work weeks where the minimum wasn't paid. That lasted for a temporary period of time. There's zero evidence that anybody knew that those mistakes were made. And the evidence is undisputed that once they were advised of it, they fixed it. Somewhere in my notes, and I'm not sure what, I can't recall what this pertains to, but I remember reading that it said 90 percent of the time the retainer was not paid. And I can't, I took notes about that and I can't find it in where I was taking my notes. Yeah, and I think that's from a statistical analysis in Appley's opening brief. I think it was cited in there. And it's looking at the rare instances where an employee worked some time during the week, but less than the time period assumed, instead of their retainer amount. And there were only a  And it  in some of those in the early days, they didn't pay it because they had a manual system in place to make the payments. There's no evidence that anyone complained or advised them about this or told them it was not in compliance with the law or their own policies. And the evidence is that once they were advised of it, they fixed it. There's no case law that was on the books in 2016 or even in 2020 when this case was filed that supports the plaintiff's position in this case. Certainly not the requirement for, you can't calculate the base pay based on some hourly or daily figure. And there's nothing that says that 602A requires the predetermined amount to include all pay for the normal work week. The only cases that have ever said that came years after this case was filed. So under those circumstances there's absolutely nothing that they could hang their head on and say that NES knew it was violating the FLSA or that it acted with reckless disregard. It's a completely unsupported theory. Now, counsel mentioned the Pickens case and said that it essentially adopted the Gentry position. There are a few things to know about that. First, it did not adopt the position that you can look behind how the employer set the predetermined weekly amount and if it was calculated based on a daily or hourly rate then you can no longer rely on section 602. That was argued, but it was not accepted in the Gentry Court of Appeals dissenting opinion that that argument doesn't make any sense. In fact, he found that the whole holding of that case and the whole holding of Gentry, he said that there was no linguistically plausible way to make these regulations fit this requirement. And I think that dissenting opinion in the Pickens case sums up kind of where we are. Well, we're banned by Gentry, right? Sorry? We're banned by Gentry. Well, I think there's one way to turn on it and that is it if a case is contrary to the previous Supreme Supreme Court precedent, then it's not presidential and the rule of orderliness doesn't apply. I think Gentry is inconsistent with Helix because Helix said that if you comply with the express requirements of 602A and 602A and 604B it said are separate,  non-overlapping ways to get to the salary basis test. It said if you comply with that, you're done. You don't have to comply with anything else in section 604B. The plan is to essentially pour in the requirements of 604B as if they were part of 602A and the Supreme Court said the exact opposite. And I think the  opinion is inconsistent with the regulations and the existing case law. And with that I'm out of time. Are there any more questions? Thank you very much.